IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL CLAYMORE,

                           Plaintiff,

         vs.                             Civil Action No.
                                     8:05-CV-0177 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF:

SCHNEIDER LAW FIRM          MARK A. SCHNEIDER, ESQ.
57 Court St.
Plattsburgh, NY 12901

FOR DEFENDANT:

HON. GLENN T. SUDDABY       WILLIAM H. PEASE, ESQ.
United States Attorney for the     Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL   BARBARA L. SPIVAK, ESQ.
Social Security Administration     Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278              GINA SHIN, ESQ.
                                    Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>DECISION AND ORDER</u>

Plaintiff Michael Claymore, who suffers from musculoskeletal conditions involving his lower back and both knees for which he has undergone only modest, intermittent care and treatment, as well as a diagnosed mental disorder, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) challenging the Commissioner's denial of his application for disability insurance and Supplemental Security Income ("SSI") benefits.  In support of his challenge, plaintiff asserts that the finding by an Administrative Law Judge ("ALJ") assigned to hear and determine the matter, to the effect that he is not disabled, is not supported by substantial evidence and that in arriving at that conclusion the ALJ overstated his exertional and non-exertional capabilities and improperly disregarded both contrary opinions of his treating physician and his subjective testimony regarding those limitations.  Plaintiff therefore seeks reversal of the Commissioner's determination and a remand of the matter to the agency with a directed finding of disability, for the limited purpose of calculating disability insurance and SSI benefits owing.

Having reviewed the record before the agency, as well as additional

materials proffered by the plaintiff but not submitted to the ALJ prior to the issuance of his decision, considered in light of plaintiff's arguments, I find that the Commissioner's decision resulted from the application of proper legal principles, and is supported by substantial evidence.

I.     BACKGROUND

Plaintiff was born on March 7, 1957; at the time of the administrative hearing in this matter, he was forty-seven years old.   Administrative Transcript at pp. 23, 63, 249.[1]  Plaintiff is divorced, and has two children, ages thirty-one and seventeen, neither of which currently resides with him. AT 249.  Plaintiff lives together with his girlfriend in an apartment in Plattsburgh, New York.  AT 250-51.

Plaintiff attended high school only through the ninth or tenth grade, and did not later achieve a general equivalency diploma ("GED").  AT 251. After leaving high school in or about 1974, AT 78, plaintiff entered the United States Navy.  AT 251.  The length of time during which plaintiff served and the circumstances of his discharge from the Navy, however,

_____

[1]     Portions of the administrative transcript of proceedings and evidence before the agency, Dkt. No. 6, filed by the Commissioner together with his answer, will be cited herein as "AT __."

-3-

are not disclosed in the record.[2]

Although he has worked in other positions, including as a pizza delivery person, and in heavy construction working in the masonry trade, involving extremely heavy lifting, AT 256-57, plaintiff's principal employment, when working, was as an over-the-road truck driver.   AT 74, 252-53.  In that position, plaintiff made deliveries into other states and to Canada, and was required to load and offload cargo from his truck, utilizing a hand jack.  AT 253-54.  Plaintiff was laid off from work on March 30, 2003, and since that time has not worked or sought employment, nor has he made any attempt to seek training or vocational rehabilitation.[3]  AT. 74, 252.

Plaintiff has a reported history of experiencing back pain, dating back at least to 1990.  *See* AT 110, 118, 256-58.  Plaintiff's back condition appears to relate back to an incident in 1990, when he was struck by a forklift and knocked unconscious.  AT 110.  Over time, plaintiff has sought

---

[2]      During the administrative hearing held in this matter, plaintiff testified that he entered the Navy in 1970.  AT 251.   Plaintiff is most likely mistaken in this regard, however, since at the time he would have been thirteen years old.

[3]      ALJ Terence Farrell's decision attributes plaintiff's leaving the workforce to increased back pain.  AT 14.  In a field office disability report filed with the agency, however, plaintiff indicated that he stopped working as a result of having been laid off from work.  AT 74.

treatment for his back condition, although on a relatively infrequent basis, through various sources including the Veteran's Administration ("VA") medical facility in Albany, New York, and the Champlain Valley Physician's Hospital Medical Center, located in Plattsburgh, New York.  *See*, *e.g.*, AT 99-102, 103-16, 152-89, 194-203.  Plaintiff's lumbar condition has been variously diagnosed, including as lumbar pain secondary to degenerative disc disease.  *See*, *e.g.*, AT 100.  X-rays taken in April of 2003 revealed minimal retrolisthesis at the L5-S1 level, with spondylosis observed in the lower lumbar spine area, but with no frank degenerative disc disease observed.  AT 101.  While surgery was once discussed, *see* AT 268, plaintiff's course of treatment over time for his back condition is best described as extremely conservative, principally involving the use of Tramadol, an analgesic, and Cyclobenzaprine, a muscle relaxer, to address his pain.  AT 265-66.  While plaintiff was evaluated at the VA facility in Albany, New York to determine his suitability as a candidate for physical therapy, he has not undergone any such treatment.[4]  AT 110-11,

---

[4]     It was noted in a report of that physical therapy evaluation that plaintiff's prognosis was poor, due in part to the fact that he "is obese and leads a sedentary life style and this increases the problems with his back".  AT 111.  The examiner also noted that plaintiff "was not cooperative in performing an exercise program, made several remarks that is [sic] was not going to help him that the only thing that was going to help his back was to stop driving truck."  *Id.*

264.

Plaintiff has also been treated on occasion over time for mental conditions.  At the age of fifteen plaintiff was hospitalized in Ogdensburg for evaluation based upon behavioral problems.  AT 122, 274.  Plaintiff was also treated during May and June of 2003 for his mental condition by Joseph Patyjewicz, a clinical social worker ("CSW").  CSW Patyjewicz diagnosed the plaintiff as suffering from an adjustment disorder with depressed mood, with partner relational problems and obsessive compulsive personality traits, as well as from alcohol abuse, and assigned plaintiff a global assessment of function ("GAF") score of fifty.[5] AT 108, 109.  A treatment plan devised by CSW Patyjewicz for the plaintiff included attendance at group stress management sessions, as well as a recommendation that he participate in an Alcoholics Anonymous program. AT 108.  Although plaintiff was scheduled for a follow-up visit with the CSW on June 24, 2003, *see* AT 109, there is no indication in the record that he kept that appointment.  During the hearing held on August 17, 2004, plaintiff stated that he was not then seeing a psychiatrist, and no

---

[5]      GAF is described as a "clinician's judgment of the individual's overall level of functioning."  Diagnostic and Statistical Mental Disorders 32 (4th ed., Text Revision 2000) ("DSM-IV-TR").  A person with a GAF score of fifty experiences some serious symptoms, such as suicidal ideation, or serious impairment in social, occupational, or school functioning. *Id.* 34.

treatment had been recommended or undergone to address his mental condition.[6]  AT 268.

According to his testimony, plaintiff's daily activities are extremely limited, based upon the pain which he experiences.  While plaintiff has in the past enjoyed fishing and owns a boat, he has been unable to utilize the boat or to fish and is depressed over that fact.  AT 118, 269.  Plaintiff is able to drive and watch television, and to assist in washing the dishes, but otherwise cannot perform any household duties.  AT 271.  Plaintiff testified to having problems with walking, in light of the pain, and indicated that he fell once in 2002 and three times during the summer of 2003 as a result of those difficulties.  AT 123, 261, 273.

II.    PROCEDURAL HISTORY

A.    Proceedings Before The Agency

Plaintiff filed parallel applications for Supplemental Security Income ("SSI") and disability insurance benefits under the Social Security Act (the "Act") on May 9, 2003, alleging a disability onset date of April 15, 2003.  AT 23-25, 53-65.  Those applications, which were based upon plaintiff's

---

[6]    At the hearing plaintiff also complained of neck pain, which he experiences one to two times per week, and pain in the groin and testicle areas.  AT 275-76.  These complaints, however, are not substantiated by any medical records, and plaintiff does not press them in support of his challenge to the Commissioner's determination.

assertion that he suffers from a back condition and depression, were denied on or about August 28, 2003.  AT 21, 26-30, 31, 33-38.

At plaintiff's request, a hearing was conducted on August 17, 2004 before ALJ Terence Farrell to address plaintiff's applications for benefits. AT 245-95.  Following that hearing, at which plaintiff was represented by counsel, and testimony from both the plaintiff and a vocational expert was elicited, ALJ Farrell issued a decision, dated December 20, 2004, in which, after conducting a *de novo* review, he concluded that plaintiff was not disabled at the relevant times.  AT 12-20.  In his decision, ALJ Farrell applied the now-familiar, five step sequential test for evaluating claims of disability under the Act, concluding at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability.  AT 13.  ALJ Farrell next determined, after reviewing the medical evidence in the record, that plaintiff suffers from both musculoskeletal and mental impairments of sufficient severity as to significantly restrict his physical or mental ability to perform basic work activities, but concluded that neither meets or equals the criteria associated with any of the presumptively disabling conditions listed in the governing regulations, 20 C.F.R. Pt. 404 Subpt. P. App.1.  AT 16.

-8-

Prior to assessing plaintiff's ability to perform his past relevant work or the availability of other work which he is capable of performing, the ALJ reviewed the medical evidence to determine plaintiff's residual functional capacity ("RFC"), including any mental and physical limitations imposed by his conditions upon his ability to perform basic work functions.  AT 14-17. In making that RFC analysis, ALJ Farrell considered but rejected plaintiff's claims regarding his limitations as neither credible nor consistent with medical evidence, including statements made by the plaintiff to examining physicians.  AT 15-16.  From an exertional point of view, the ALJ concluded that plaintiff retains the RFC to perform unskilled or semi-skilled work requiring lifting, carrying, pushing and pulling twenty pounds occasionally and ten pounds frequently; standing and walking six hours in an eight hour work day, with normal breaks, with standing being limited to sixty minutes at a time; and sitting for six hours in an eight work day, with normal breaks, and again with sitting limited to about sixty minutes at a time, subject to the further limitation that he only occasionally engage in balancing, climbing, crawling, stooping and kneeling.  AT 16-17.  From a non-exertional standpoint, the ALJ concluded that plaintiff has mild restrictions in the areas of daily living and social functions, and moderate

limitations in maintaining concentration, persistence or pace, but with no episodes of deterioration or decompensation of extended duration.  AT 15.

Applying his RFC finding, ALJ Farrell determined that plaintiff is unable to perform his past relevant work in light of its exertional and postural demands.  AT 17.  Turning to step five, utilizing the governing medical-vocational guidelines (the "grid"), 20 C.F.R. Pt. 404, Subpt. P., App. 2 as a framework, and applying his RFC finding which essentially translates to the ability to perform some though not the full range of light work, the ALJ found that reliance upon the grid would result in a directed finding of no disability.  AT 17-18.  Concluding, however, that plaintiff suffers from exertional and/or non-exertional limitations which impede his ability to perform a full range of light work, the ALJ elicited the testimony of a vocational expert and, based upon that testimony, found the existence of jobs in sufficient numbers in the national and local economies capable of being performed by the plaintiff including, *inter alia,* as a cashier, a production assembler, a general assembler, and an order clerk.  AT 18.  The ALJ thus concluded that plaintiff was not disabled, and correspondingly, not entitled to receive SSI and disability insurance benefits.  AT 18-20.  The ALJ's decision became a final determination of

the Commissioner when, on January 27, 2005, the Social Security

Administration Appeals Council denied plaintiff's request for review of that

opinion.[7]  AT 4-7.

> B.    This Action

Plaintiff commenced this action on February 9, 2005.  Dkt. No. 1.

Issue was thereafter joined by the Commissioner's filing on May 24, 2005

of an answer, accompanied by an administrative transcript of proceedings

and evidence before the agency.  Dkt. Nos. 5, 6.  With the filing of

plaintiff's brief on June 14, 2005, Dkt. No. 7, and that on behalf of the

Commissioner on September 22, 2005, Dkt. No. 15, the matter is now ripe

for determination, and has been referred to me for a decision, based upon

consent of the parties, pursuant to 28 U.S.C. § 636(c).[8] *See* Dkt. No. 24.

III.   DISCUSSION

---

[7]     On that same date, the Appeal's Council issued an order acknowledging receipt of a letter from plaintiff's counsel, dated December 28, 2004, and including that letter as part of the administrative record of proceedings and evidence before the agency.  AT 8; *see* AT 243-44.

[8]     This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone,* 70 F. Supp. 2d at 148 (citing *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of

-13-

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

> B.    Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only unable
> to do his previous work but cannot, considering his
> age, education, and work experience, engage in
> any other kind of substantial gainful work which
> exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.*

§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    The Evidence In This Case

-16-

1.    <u>Listings</u>

By regulation, the Commissioner has set forth a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected.[9]  20 C.F.R. Pt. 404, Subpt. P, App. 1; *see Sullivan v. Zebley*, 493 U.S. 521, 529-30, 110 S. Ct. 885, 891 (1990).  The listed impairments are presumptively disabling – "[t]hat is, if an adult is not actually working and his [or her] impairment matches or is equivalent to a listed impairment, he [or she] is presumed unable to work and is awarded benefits without a determination whether he [or she] actually can perform his [or her] own prior work or other work."  *Zebley*, 493 U.S. at 532, 110 S. Ct. at 892 (citing *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987)).

At step three of the now familiar, five part analysis, an ALJ must determine whether the condition from which a claimant suffers meets or equals a listed impairment.  20 C.F.R. §§ 404.1520(d), 416.920(d); *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris*, 728 F.2d at 584).  The

---

[9]    The listings are broken down into fifteen categories, including growth impairment, musculoskeletal system, special senses and speech, respiratory system, cardiovascular system, digestive system, genitourinary impairments, hematological disorders, skin disorders, endocrine system, impairments that affect multiple body systems, neurological, mental disorders, malignant neoplastic diseases, and immune system.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

burden of establishing that a condition meets or equals one of the listed impairments rest with the claimant.  *Shaw*, 221 F.3d at 132; *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000).

As can be seen, a claimant may establish disability at step three by proving that his or her impairment meets all of the literal requirements of a particular listing.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Alternatively, disability may be shown when, while not meeting the specific criteria of a listing, a claimant's condition is equivalent to the listed condition.  *Id.*  "For a claimant to qualify for benefits by showing that his [or her] unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he [or she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Zebley*, 493 U.S. at 531, 110 S. Ct. at 891 (citing 20 C.F.R. § 416.926(a)) (emphasis in original).  "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his [or her] unlisted impairment or combination of impairments is as severe as that of a listed impairment."  *Zebley*, 493 U.S. at 531, 110 S. Ct. at 892 (citation omitted).

Plaintiff maintains that at step three of the governing, sequential analysis the ALJ erred in failing to conclude, based upon the applicable

medical evidence, that his lumbar condition meets or equals a listed,

presumptively disabling disorder.  In making that argument, plaintiff cites

Listing 1.05C.  That former listing, which related to other vertebrogenic

disorders, however, was both renumbered and significantly amended in

2002.  *See* 66 Fed. Reg. 58010-01 (Nov. 19, 2001), *available at* 2001 WL

1453802, at *58017-18.  The currently-applicable listing, section 1.04,

addressing disorders of the spines, requires that such a disorder

> [result] in compromise of a nerve root (including the
> cauda equina) or the spinal cord.  With:
>
> A.   Evidence of nerve root compression
>      characterized by neuro-anatomic distribution
>      of pain, limitation of motion of the spine,
>      motor loss (atrophy with associated muscle
>      weakness or muscle weakness)
>      accompanied by sensory or reflex loss and, if
>      there is involvement of the lower back,
>      positive straight-leg raising test (sitting and
>      supine);
>
>                              or
>
> B.   Spinal arachnoiditis, confirmed by an
>      operative note or pathology report of tissue
>      biopsy, or by appropriate medically
>      acceptable imaging, manifested by severe
>      burning or painful dysesthesia, resulting in
>      the need for changes in position or posture
>      more than once every 2 hours;
>
>                              or

-19-

> C.    Lumbar spinal stenosis resulting in
> pseudoclaudication, established by findings
> on appropriate medically acceptable imaging,
> manifested by chronic nonradicular pain and
> weakness, and resulting in inability to
> ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P § 1.04.

In his decision ALJ Farrell found that plaintiff's impairments were not sufficiently severe, either singly or in combination, to meet or equal the criteria associated with any of the listed disorders.  AT 16.  Unfortunately, however, the ALJ's decision does not provide the court with guidance concerning the rationale employed in rejecting Listing 1.04, *see* AT 10-11, as he was not required by the governing regulations to specifically elaborate on his reasoning in that regard.  *See Flors v. Massanari*, No. 00 CIV 5767, 2002 WL 100631, at *6 (S.D.N.Y. Jan. 25, 2002); *see also*, *e.g.*, *Morel v. Massanari*, No. 01CIV0186, 2001 WL 776950, at *10 (S.D.N.Y. July 11, 2001); *Castillo v. Shalala*, No. 93 CIV. 7805, 1995 WL 598977, at *4 (S.D.N.Y. Oct. 10, 1995).

Despite this handicap I find, based upon my review of the record, that the ALJ's implicit rejection of that listed disorder as inapplicable to plaintiff's circumstances is supported by substantial evidence.  The record, for example, reveals that the plaintiff has not tested positively in straight

leg testing in the sitting and supine positions, as required.  *See*, *e.g.*, AT 120, 180.  Similarly, the record contains no diagnosis of spinal arachnoiditis, confirmed by any operative note, pathology report of a tissue biopsy, or by appropriate testing such as magnetic resonance imaging ("MRI"), an alternative requirement.[10]  *See generally,* AT 97-242. The record further fails to establish that plaintiff experiences severe burning or painful dysesthesia, or that he has had difficulty in ambulating effectively, another means of satisfying the listing's requirements.  AT 118, 180.  In short, the ALJ's determination that plaintiff's disorder did not meet or equal Listing 1.04 is supported by substantial evidence.

2.    Treating Physician

In his challenge, plaintiff intimates that in arriving at his finding of no disability, the ALJ ran afoul of the treating physician rule, rejecting opinions of plaintiff's health care providers in conflict with that determination.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically

---

[10]    Plaintiff's counsel acknowledges that his client has not undergone either MRI or electromyogram testing, hypothesizing that this might be due to a limitation of VA resources.  Plaintiff's Brief (Dkt. No. 7) at 9.

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588;

*Barnett*, 13 F. Supp. 2d at 316.[11]  Such opinions are not controlling,

however, if contrary to other substantial evidence in the record.  *Veino*,

312 F.3d at 588.  Where conflicts arise in the form of contradictory medical

evidence, their resolution is properly entrusted to the Commissioner.  *Id.*

    In deciding what weight, if any, an ALJ should accord to medical

opinions, he or she may consider a variety of factors including "[t]he

duration of a patient-physician relationship, the reasoning accompanying

the opinion, the opinion's consistency with other evidence, and the

physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3

---

[11]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . . If we find that
> a treating source's opinion on the issue(s) of
> the nature and severity of your impairment(s)
> is well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other
> substantial evidence in your case record, we
> will give it controlling weight.   When we do
> not give the treating source's opinion
> controlling weight, we apply [various factors]
> in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp. 2d at 316-17.

While it is true that various of the treating source notes cited in support of plaintiff's argument reference his complaints of pain, none of them are squarely contradictory to the ALJ's determination regarding plaintiff's capabilities and, indeed, in most respects they are fully supportive of that determination.[12],[13]  The clinical findings of Dr. Thimma

---

[12]     One of the sources relied upon by plaintiff in this portion of his argument is a physical therapist.  While the objective findings of a physical therapist can be considered as evidence of a claimant's limitations, *see Chandler v. Callahan,* No. 96-CV-1790, 1998 WL 99384, at *5 (N.D.N.Y. Feb. 23, 1998), a physical therapist's opinions are not entitled to the same deference as those of a treating source.  *Diaz v. Shalala,* 59 F.3d 307, 314 (2d Cir. 1995); *Toro v. Chater,* 937 F. Supp. 1083, 1091-92 (S.D.N.Y. 1996).

[13]     In his section addressing treating physicians plaintiff lists Dr. Kasprzak.  *See* Plaintiff's Brief (Dkt. No. 7) at p. 6.  As a consultative physician, however, Dr. Kasprzak clearly does not qualify as a treating physician whose opinions are entitled to greater weight than those of other examining and non-examining medical professionals.  *See Schisler*, 3 F.3d at 567-68 (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)); *see also Nelson v. Barnhart*, No. 01 Civ. 3671, 2003 WL 1872711, at

Gandhi, for example, support the ALJ's finding.  In her examination of the plaintiff on April 24, 2003, Dr. Gandhi made normal physical, neurological, sensory and reflex findings, and also noted that plaintiff ambulated freely.[14]  AT 179-80.

Despite plaintiff's argument to the contrary, the ALJ did not expressly reject any opinions of plaintiff's treating physicians, and indeed his determination is not squarely in conflict with any treating source report. While it is true that some of the treating source reports make mention of pain, they do so only on the basis of plaintiff's statements to them, and not on the basis of any inadvertent analysis or observation. Consequently I find that plaintiff's argument regarding rejection of treating source opinions is without merit.

### 3.    The ALJ's RFC Finding

Pivotal to the ALJ's finding of no disability is his determination regarding plaintiff's RFC.  Plaintiff contends that in making his RFC assessment the ALJ understated his limitations based upon his mental and physical impairments.

---

*6 (S.D.N.Y. Apr. 10, 2003); *Reyes v. Barnhart*, 226 F. Supp. 2d 523, 528 (S.D.N.Y. 2002).

[14]    The ALJ did accord deference to Dr. Gandhi's opinion that plaintiff could not perform his past work as a truck driver.  *See* AT 14-15.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a.  Non-exertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 588).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737

F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

The ALJ's RFC opinion in this case draws ample support from medical evidence in the record.  The report of Dr. Donald Kasprzak, who, consultatively examined the plaintiff, for example, records his observation that plaintiff was able to get on or off of the examining table without difficulty, and demonstrated a full range of motion with good muscular strength and without evidence of atrophy in his upper extremities.  Based upon his examination and review of the plaintiff's X-rays, Dr. Kasprzak determined that plaintiff was only modestly limited in bending, lifting, and his ability to drive truck.  AT 120-21.  Such findings can constitute substantial evidence supporting an ALJ's decision.  *See Monguer v. Heckler,* 722 F.2d 1033, 1039 (2d Cir. 1983).

The ALJ's RFC determination also draws support from an RFC assessment of a state agency analyst, *see* AT 127-32, whose opinions also may properly be considered.  *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.) (noting that state agency analysts "are qualified as experts in the evaluation of medical issues in disability claims.  As such their opinions may constitute substantial

evidence if they are consistent with the record as a whole.") (citations and quotations omitted).  In that assessment, the analyst concluded that plaintiff could lift up to twenty pounds occasionally and ten frequently; was capable of standing in or walking, with normal breaks, for approximately six hours in an eight hour work day; and could sit also with normal breaks, for a similar time period.  *Id.*  That assessment also reflected that plaintiff was limited to occasionally climbing, balancing, stooping, kneeing, crouching and crawling, but otherwise did not suffer from any limitations. *Id.*

The mental component of the ALJ's RFC, infusing non-exertional limitations into the equation, also draws support from the record.  Applying the prescribed psychiatric review technique, the ALJ concluded that plaintiff suffered from only mild restrictions in daily living resulting from mental impairment, as well as a mild limitation in the area of social functioning and modest limitations in maintaining concentration, persistence or pace, and without reported episodes of deterioration or decompensation of extended duration.[15]  AT 15.  These findings are

_____

[15]     When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow a special procedure at each level of administrative review.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.  The governing regulations prescribed the mechanics for analyzing the severity of the impairment and its effects upon the ability to perform work functions.  *Id.*  An ALJ is no longer required

supported by the report of consultative psychologist Dr. Brett T. Hartman, *see* AT 122-25, and of psychologist Dr. T. Guenther.  *See* AT 133-149. The opinions of such non-examining psychological experts can provide support for an ALJ's determination of no disability.  *See Cotto v. Comm'r of Soc. Sec.*, 212 F. Supp. 2d 167, 171-72 (W.D.N.Y. 2002); *see also Barringer*, 358 F. Supp. 2d at 79.

Further support for the ALJ's determination is drawn from plaintiff's own responses to an agency disability questionnaire, in which he acknowledged experiencing no problems in paying attention or getting along with bosses, teachers, police, landlords and other people of authority, and an ability to follow spoken and written instructions.  AT 86-87.  That questionnaire response, prepared in June of 2003, also reflects that the plaintiff does not have difficulty remembering things.  *Id.*

In sum, the ALJ's RFC finding which formed the basis for

---

under the governing regulations to append a Psychiatric Review Technique Form ("PRTF") to his or her decision when addressing a case when a psychological impairment is implicated.  65 Fed. Reg. 50746-01 (Aug. 21, 2000), *available at* 2000 WL 1173632, at *50758.  The ALJ is, however, nonetheless subject to the requirement that an analysis of whether a mental impairment exists be incorporated or in some way embodied within his or her decision when evidence of such an impairment is presented.  20 C.F.R. §§ 404.1520a.  To trigger these requirements a claimant bears the initial responsibility of providing medical evidence sufficient to indicate the potential existence of a mental impairment.  *Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir. 1991) (citing 20 C.F.R. §§ 404.1508, 404.1514).

hypothetical questions posed to the vocational expert, leading ultimately to a finding of no disability, including that plaintiff retains the ability to perform unskilled or semi-skilled work with occasional lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; standing and walking six hours in an eight hour work day, with normal breaks, and with standing limited to about sixty minutes at a time, after which he would need to sit several minutes before resuming standing; with sitting six hours in an eight hour work day with normal breaks, with sitting limited to sixty minutes at a time; and with only occasional balancing, climbing, crawling, stooping and kneeling, is supported by substantial evidence in the record.

4.    Rejection of Plaintiff's Subjective Complaints of Pain

Plaintiff next argues that the ALJ's determination improperly discounted his claims of disabling pain, as well as the side effects associated with his prescribed medications.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant.

*Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*).  Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain.  *See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[16]  *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony

---

[16]      In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be

disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

In this instance, as the ALJ noted, plaintiff's subjective pain complaints are themselves in conflict with other statements which he has made regarding his capabilities.  At the hearing, for example, plaintiff testified that his ability to lift extends only to ten pounds, despite having reported to Dr. Kasprzak a short time earlier that he was capable of lifting twenty pounds.  *Compare* AT 118 *with* AT 266.  Plaintiff also reported to Dr. Kasprzak, in stark contrast to his claims now, that he was able to drive for up to two hours at a time, and could walk without difficulty on level ground.  AT 118.  Given these inconsistencies, coupled with the lack of medical evidence to corroborate his pain complaints and the conservative course of treatment undertaken, including his failure to attend any physical therapy, the ALJ properly rejected plaintiff's complaints of disabling pain.

The ALJ also noted that plaintiff's claims regarding the side effects experienced from his medication were not well-supported by the medical records.  During the hearing, plaintiff testified that while he has encountered no side effects from taking Tramadol, he does experience dizziness from the Cyclobenzaprine. AT 266.  Plaintiff also testified,

however, that his physicians chose not to change his medication regimen since the Cyclobenzaprine appeared to be "working pretty good." *Id.* Plaintiff's complaints regarding the severity of side effects experienced from his medication are undermined by the fact that his medical records fail to reflect any request for a change to another pain relief medication which would cause him to experience less severe consequences.

D.    New Evidence

In communications received by the court from his counsel, dated May 23, 2006, Dkt. No. 16, and October 12, 2006, Dkt. No. 19, plaintiff requests that making its administrative judicial review under section 405(g), the court in consider new evidence which, he contends, bears upon his condition during the relevant times.  The new evidence proffered includes results of MRI testing conducted on May 10, 2006, and of X-rays taken in January of 2006.

The new evidence issue is presented by the plaintiff in a manner which is distinct, in a legally significant way, from that in which the issue ordinarily arises.  Typically, a Social Security claimant will urge consideration by the Appeals Council of materials generated subsequent to an ALJ's determination when requesting review of that decision – a

matter expressly authorized by regulation.  20 C.F.R. §§ 404.970(b), 416.1470(b); *see Perez,* 77 F.3d at 43.  In such circumstances, the critical inquiry becomes whether the evidence is "new", and not merely cumulative of what is already in the record, and whether it is material – that is, both 1) relevant to the claimant's condition during the time period for which benefits have been denied, and 2) probative, revealing a "reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently."  *Webb v. Apfel,* No. 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan,* 949 F.2d 57, 60 (2d Cir. 1990)).

In this instance the materials now proffered by the plaintiff were not submitted to the Appeal's Council before that body rendered its decision denying plaintiff's request for review.  In submitting the recent communications, plaintiff appears to suggest that this court is empowered, in conducting its judicial review function, to consider evidence which was not before the agency at the time its determination was rendered.

The court's purview under 42 U.S.C. § 405(g) is extremely limited; that section, which defines the scope of this court's administrative review jurisdiction, does not authorize the acceptance and consideration of

-34-

additional evidence which was not in the administrative record before the

agency when determining whether substantial evidence supports the

conclusion reached.  *See* 42 U.S.C. § 405(g).  The appropriate course of

action, should it be deemed appropriate based upon the recent

submission, would be to remand the matter to the agency pursuant to

sentence six of 42 U.S.C. § 405(g) for consideration of the new evidence.

*Id.*; *Lisa*, 940 F.2d at 43 (citing *Tirando v. Bowen*, 842 F.2d 595, 597 (2d

Cir. 1988)).[17]

In order to be considered new evidence worthy of consideration,

however, the materials proffered must shed light upon the claimant's

condition during the relevant times – that is, up until the time of the

Commissioner's determination.  *See Lisa*, 940 F.2d at 43; *see also Perez*,

77 F.3d at 45.  While new evidence bearing upon a claimant's condition at

a later point in time might provide a basis for the filing of a new application

---

[17]     Sentence six provides, in pertinent part, that

> [t]he court . . . may at any time order
> additional evidence to be taken before the
> Commissioner of Social Security, but only
> upon a showing that there is new evidence
> which is material and that there is good cause
> for the failure to incorporate such evidence
> into the record in a prior proceeding; . . .

42 U.S.C. § 405(g).

and a subsequent finding of disability, it is not permissibly considered in the context of a judicial review proceeding absent the required nexus to the plaintiff's condition at the relevant times. *See Tirando*, 842 F.2d at 597.

In this instance, it is apparent to the court that neither the X-rays taken in January of 2006 nor MRI testing from May of this year bears upon plaintiff's condition at or prior to the time of the Commissioner's determination. Absent submission of any medical evidence – which is wholly lacking – that would link these test results to plaintiff's condition at the relevant times, they are not properly considered, nor do they form a basis under sentence six for a remand to the agency. *See*, *e.g.*, *Burger v. Barnhart*, No. 05-CV-0579, 2007 WL 655311, at *7-8 (W.D.N.Y. Feb. 27, 2007) (rejecting plaintiff's request that the district court consider new evidence submitted with her appeal brief because evidence was not relevant to time period pertaining to her claim); *Roman v. Barnhart*, No. 04 Civ. 4515, 2007 WL 490977, at *17-18 (S.D.N.Y. Jan. 23, 2007) (refusing to order remand under 42 U.S.C. § 405(g) where new evidence submitted to district court was not relevant to the time period in question); *see also Frezza v. Barnhart*, No. 01-CV-4153, 2002 WL 31102625, at *5 n.3

(E.D.N.Y. Sept. 18, 2002); *Abreu-Mercedes v. Chater*, 928 F. Supp. 386, 390-91 (S.D.N.Y. 1996).

In sum, because the new materials now proffered by the plaintiff are not properly before the court, and in any event do not address plaintiff's condition at the relevant times, plaintiff's request for consideration of those additional materials therefore will be denied.

IV.   <u>SUMMARY AND ORDER</u>

The medical evidence in the record supports the conclusion that plaintiff suffers from some degree of pain in his lumbar spine, as well as exceedingly modest non-exertional limitations imposed by his mental disorder.  The fact that he does suffer from some degree of discomfort as a result of his medical condition, however, does not automatically qualify him as disabled, since "disability requires more than mere inability to work without pain."  *Dumas v. Schweicker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

In this instance a vocational expert, when presented with a hypothetical closely approximating the ALJ's finding of plaintiff's RFC, concluded that there are a variety of light work and sedentary positions available in sufficient numbers within the national and regional economies of which plaintiff is capable of performing notwithstanding his limitations.

Plaintiff asserts that he is unable to perform those positions because of his condition and his need to frequently change positions.   As the Second Circuit has observed, however, "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."  *Halloran v. Barnhart,* 362 F.3d 28, 33 (2d Cir. 2004).  It should be noted, moreover, that the ALJ's hypothetical to the vocational expert specifically provided allowance for change in positions to accommodate plaintiff's needs in that regard.

Having reviewed the matter carefully, I find that the Commissioner's decision resulted from the application of proper legal principles and is supported by substantial evidence in the record.  Accordingly, it is therefore hereby

ORDERED, that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint DISMISSED in all respects; and it is further

ORDERED, that plaintiff's request for consideration of the additional materials submitted by plaintiff to the court on May 23, 2006 and October

12, 2006, as providing a basis to remand this matter to the agency for further consideration pursuant to sentence six of 42 U.S.C. § 405(g), be DENIED.


Dated:      March 29, 2007
            Syracuse, NY


_David E. Peebles_
David E. Peebles
U.S. Magistrate Judge